**Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000138
13-JUN-2014
09:36 AM**

NO. CAAP-12-0000138

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
CRISTOPHER J.A. RAMOS, Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
HONOLULU DIVISION
(CASE NO. 1DTC-11-020533)

MEMORANDUM OPINION
(By: Reifurth and Ginoza, JJ.,
with Nakamura, C.J. concurring separately)

Defendant-Appellant Cristopher J.A. Ramos (Ramos)
appeals from the Notice of Entry of Judgment and/or Order and
Plea/Judgment, entered on February 17, 2012, in the District
Court of the First Circuit, Honolulu Division (district court).[1]
Ramos was convicted of Excessive Speeding, in violation of Hawaii
Revised Statutes (HRS) § 291C-105(a)(1) (2007).[2]

In his opening brief, Ramos contends that the district
court abused its discretion in admitting evidence of a laser gun
speed reading because the State failed to provide sufficient

---

[1]  The Honorable Clarence Pacarro presided.

[2]  HRS § 291C-105(a)(1) provides, in relevant part, that:

§291C-105 **Excessive speeding.**  (a) No person shall
drive a motor vehicle at a speed exceeding:
(1)    The applicable state or county speed limit by
thirty miles per hour or more[.]

foundation for its admission into evidence. Ramos claims that without evidence of the laser gun reading, his conviction must be reversed for insufficient evidence.

In its answering brief, Appellee State of Hawai'i (State) argues that the testimony of Honolulu Police Department police officer Russell Maeshiro (Officer Maeshiro) provided the requisite foundation for the laser gun reading to be admitted into evidence. The State's argument included the assertion that

> Officer Maeshiro's testimony revealed he had personal knowledge of the manufacturer's recommendations regarding the testing and operation of the laser gun. Officer Maeshiro's testimony also provided the requisite evidence that "the nature and extent of [his] training in the operation of a laser gun [met] the requirements indicated by the manufacturer." *Assaye*, 121 Hawai'i at 215, 216 P.3d at 1238.

(Brackets in original and emphasis added).

After initial briefing by the parties was completed, this court issued an order on February 24, 2014, that set the case for oral argument and ordered that the parties be prepared at oral argument to discuss:

> 1. The impact on this appeal of the Hawai'i Supreme Court's opinions in State v. Nesmith, 127 Hawai'i 48, 276 P.3d 617 (2012); State v. Gonzalez, 128 Hawai'i 314, 288 P.3d 788 (2012); State v. Apollonio, 130 Hawai'i 353, 311 P.3d 676 (2013); and State v. Armitage, [132 Hawai'i 36, 319 P.3d 1044 (2014)].
>
> 2. Whether Defendant-Appellant Christopher [sic] J. A. Ramos (Ramos) has made a deliberate choice not to challenge the sufficiency of the excessive speeding charge on appeal, and if so, the implications of that choice.
>
> 3. Whether the manufacturer of the laser gun used in Ramos's case has set forth specific training requirements for the operation of the laser gun.

Subsequently, Ramos requested a continuance of oral argument and to allow for supplemental briefing. In an order issued on March 3, 2014, this court granted Ramos's request to continue the oral argument and ordered supplemental briefing on the issues set forth in the February 24, 2014 order, as well as the impact on this appeal of the Hawai'i Supreme Court's recent decisions in State v. Amiral, 132 Hawai'i 170, 319 P.3d 1178

2

(2014), and <u>State v. Davis</u>, No. SCWC-12-0000074, --- P.3d ---, 2014 WL 747422 (Haw. Feb. 26, 2014).

In his supplemental brief, *inter alia*, Ramos raised for the first time a challenge to the charge in this case. He asserts that he had not made a deliberate choice not to challenge the sufficiency of the charge on appeal and that the supreme court's decisions in <u>Nesmith</u>, <u>Apollonio</u>, <u>Gonzalez</u> and <u>Armitage</u> establish that the failure to allege *mens rea* in the charge renders it deficient.

In its supplemental brief, the State essentially conceded that Ramos's conviction should be reversed, stating that Officer Maeshiro's testimony in this case "seems to suffer from the same deficiencies" that the Hawai'i Supreme Court noted as to the officer's testimony in <u>Amiral</u>. The State thus summed up its position as follows:

> Relying in substantial part on *Assaye, supra*, Defendant requests that his conviction be reversed should this Honorable Court conclude, "the State failed to lay a sufficient foundation for [Officer] Maeshiro's testimony regarding the speed reading given by the laser gun." OB at page 16. As noted hereinabove, the deficiencies in the officer's testimony regarding his training to operate the laser speed gun seem to have rendered inadmissible his testimony of the reading from the device. Without such testimony, there was no evidence of the speed at which Defendant was traveling. Therefore, under the particular circumstances of this case, Appellee cannot in good faith contest Defendant's request.

Oral argument was held on April 9, 2014. At oral argument, the State expressly conceded the district court erred in holding that there was sufficient foundation to admit the laser gun reading in this case. The State also attempted, however, to present a User's Manual to the court that day, which the State represented to be the User's Manual for the laser gun at issue in this case, and requested the court take judicial notice that the manual did not contain any operator training requirements. The court advised the State that it would be given three weeks to file a motion as to its request for judicial notice, which the State subsequently filed. We address the State's motion *infra*.

3

For the reasons discussed below, we reverse Ramos's conviction.

## I. **Sufficiency of the Charge**

In Apollonio, the Hawai'i Supreme Court recently established that a defendant may successfully challenge the sufficiency of a charge for failure to allege *mens rea* even when the challenge to the charge is raised for the first time on appeal. 130 Hawai'i at 358, 311 P.3d at 681.

Under the Motta/Wells liberal construction standard, where an appellant alleges a charge is defective for the first time on appeal, an appellate court must "liberally construe the indictment in favor of validity[.]" State v. Motta, 66 Haw. 89, 93, 657 P.2d 1019, 1021 (1983); see also State v. Wells, 78 Hawai'i 373, 381, 894 P.2d 70, 78 (1995). In such circumstances, a conviction will not be vacated "unless the defendant can show prejudice or that the indictment cannot within reason be construed to charge a crime." Motta, 66 Haw. at 91, 657 P.2d at 1020 (emphasis added).

In Apollonio, the supreme court held that even under the liberal construction standard, when the charge failed to allege the required *mens rea,* the "charge cannot be reasonably construed to state an offense." 130 Hawai'i at 358, 311 P.3d at 681 (citation and internal quotation marks omitted); see also State v. Akitake, 131 Hawai'i 166, 316 P.3d 1277, No. SCWC-29934 (Haw. Jan. 10, 2014) (SDO). The conviction in Apollonio was thus vacated and the case remanded with instructions for the district court to dismiss the case without prejudice. 130 Hawai'i at 363, 311 P.3d at 686.

In this case, Ramos is charged with Excessive Speeding in violation of HRS § 291C-105(a)(1). Excessive Speeding "is not a strict liability offense and requires proof that the defendant acted intentionally, knowingly, or recklessly. Thus, the requisite states of mind must be alleged in a charge of this offense." Gonzalez, 128 Hawai'i at 315, 288 P.3d at 789.

Because the charge against Ramos did not allege the requisite *mens rea*, the charge was deficient.

If we were to decide this case solely on the deficiency in the charge, we would vacate Ramos's conviction and remand the case to the district court with instructions to dismiss the charge without prejudice. See id. However, in this appeal, Ramos has challenged the foundation for the laser gun reading and contends that without the laser gun reading there is insufficient evidence to support his conviction. Unlike in Gonzalez, we must further address Ramos's argument as to sufficiency of the evidence. See Davis, 2014 WL 747422, at *20.

## II. **Foundation for Laser Gun Reading and Sufficiency of the Evidence**

Officer Maeshiro, the only trial witness, testified that on January 17, 2011, he utilized a laser gun on Ramos's vehicle, which was traveling on Nimitz Highway. According to Officer Maeshiro, the laser gun he operated that day was manufactured by Laser Technologies, Inc. (LTI) and was a 20-20 Ultralite[3] model. Officer Maeshiro testified that the reading from the laser gun indicated Ramos's vehicle was traveling at seventy-six miles per hour, and that the speed limit in the area was thirty-five miles per hour.

In State v. Assaye, 121 Hawai'i 204, 216 P.3d 1227 (2009), the Hawai'i Supreme Court addressed the necessary foundation for admission of a laser gun speed reading and held, first, that "the prosecution must prove that the laser gun's accuracy was tested according to procedures recommended by the manufacturer." Id. at 215, 216 P.3d at 1238. Second, the court held that the prosecution must demonstrate that the officer using

---

[3] The spelling of "Ultralite" here and within this decision is based on the transcripts from the trial in this case. Officer Maeshiro does not provide the spelling in his testimony and thus the source of this spelling is unclear. We note that in Section III *infra*, we refer to a User's Manual, which the State attached to its Motion Requesting Mandatory Judicial Notice of Adjudicative Fact, in which the name of an LTI laser gun is referenced as "UltraLyte."

the laser gun was qualified by training and experience to operate a particular laser gun, namely "whether the nature and extent of an officer's training in the operation of a laser gun meets the requirements indicated by the manufacturer." Id. (emphasis added).

Officer Maeshiro testified that he was originally trained in 1994, in a four-hour course, to operate the Marksman laser gun, and that in 1998 he had a one-hour "familiarization course" when the Ultralite model came out. Officer Maeshiro testified that both the Marksman and Ultralite laser guns were manufactured by LTI, and that he had reviewed the LTI manual with respect to the operation and testing of both types of laser guns. According to Officer Maeshiro, the manuals were from LTI and he knows they were LTI manuals because they "had the Laser Technologies logo and the copyright and registered trademark insignias on it." Assuming arguendo that this testimony provides sufficient evidence that the manuals reviewed by Officer Maeshiro were "provided by" LTI, see Gonzalez, 128 Hawai'i at 325-26, 288 P.3d at 799-800, the evidence did not demonstrate that the nature and extent of Officer Maeshiro's training in the operation of the subject laser gun met the requirements indicated by LTI.

During his testimony, Officer Maeshiro never testified as to what the manufacturer required in terms of the nature and extent of training for officers to use the LTI 20-20 Ultralite. At most, he testified in a conclusory fashion that the training and instruction he received for the LTI 20-20 Ultralite was "consistent" with the manufacturer's requirements in the manual that he had received.

In Gonzalez, the Hawai'i Supreme Court clarified the evidentiary requirements under Assaye, to "demonstrate that an officer is qualified by training to operate the laser gun in order to lay an adequate foundation for the readings taken from the gun." 128 Hawai'i at 326, 288 P.3d at 800. The court stated:

6

> The record indicates the court abused its discretion by ruling that the State introduced evidence sufficient to establish that Officer Franks' training met the requirements set by the manufacturer. The State introduced no evidence regarding the manufacturer's requirements, and therefore, regardless of the extent of Officer Franks' training, the court could not have properly concluded that the manufacturer's requirements were met.
>
> To lay a sound foundation for the introduction of a reading from a laser gun, Assaye requires the prosecution to demonstrate that "the nature and extent of an officer's training in the operation of the laser gun meets the requirements indicated by the manufacturer." Assaye, 121 Hawai'i at 215, 216 P.3d at 1238. Logically, to meet this burden the prosecution must establish both (1) the requirements indicated by the manufacturer, and (2) the training actually received by the operator of the laser gun.
>
> Here, at trial the State only provided evidence of the extent of Officer Franks' training. Although the State explained that Officer Franks received four hours of training in 2003, and further training in 2009 and 2010, the record is silent as to what type of training is recommended by the manufacturer. Without a showing as to the manufacturer's recommendations, the court could not possibly have determined whether the training received by Officer Franks met "the requirements indicated by the manufacturer." Id.

Id. at 327, 288 P.3d at 801 (emphasis added); see also Apollonio, 130 Hawai'i at 362-363, 311 P.3d at 685-86.

Recently, in Amiral, the Hawai'i Supreme Court held that a police officer's testimony "that the training he received was consistent with what he read in the manual regarding the manufacturer's recommended procedures is insufficient under the standard established by Gonzalez[.]" 132 Hawai'i at 178, 319 P.3d at 1186. The court explained:

> First, no evidence was presented showing that the manual relied upon by Officer Ondayog to perform the four tests actually set forth the manufacturer's recommended training requirements.
>
> Although Officer Ondayog testified that his training conformed with the manufacturer's requirements because his training conformed with the manual, the contents of the manual as to those requirements were not established by the State. Thus, it is not possible to determine whether the manufacturer's recommendations were actually described in the manual, so that conformance with the manual would be equivalent to conformance with the manufacturer's recommendations.

> Second, assuming that the manufacturer's recommendations were contained in the manual relied upon by Officer Ondayog, his conclusory statement that the manual conformed to the training he received did not describe the type of training stated in the manual.
>
> Third, there was no other evidence to demonstrate that an officer learning to perform the four tests described by Officer Ondayog satisfies the manufacturer's training requirements. Consequently, the officer's description of the four tests did not identify the type of training recommended by the manufacturer.
>
> Fourth, there is no indication in the record that the instructors of the training courses Officer Ondayog attended were actually certified by the manufacturer or had been trained by the manufacturer. Additionally, there was no evidence that the training course itself was approved by the manufacturer or was consistent with the manufacturer's requirements. Such evidence together with the Officer's learning to perform the four tests could have established the type of training the manufacturer recommended.

Id. at 178-79, 319 P.3d at 1186-87 (footnotes omitted).

In this case, like Gonzalez and Amiral, there is no evidence establishing "the requirements indicated by the manufacturer" as to the nature and extent of training for the LTI 20-20 Ultralite, including for instance, whether LTI required only a one-hour familiarization course for those already certified to operate the LTI Marksman. Because Gonzalez, Apollonio, and Amiral expressly require that the prosecution establish *both* the manufacturer's requirements for training *and* the training actually received by the operator, the conclusory and limited testimony by Officer Maeshiro that his training was "consistent" with the manufacturer's requirements in "the manual" does not meet the prosecution's evidentiary burden. As previously noted, the State concedes in its supplemental brief that Officer Maeshiro's testimony "seems to suffer from the same deficiencies the court noted in Amiral."

Without demonstrating that the nature and extent of Officer Maeshiro's training on the LTI 20-20 Ultralite met the requirements indicated by LTI, there was insufficient foundation to admit into evidence the laser gun reading in this case under the rulings in Gonzalez, Apollonio and Amiral. Additionally, even if we read Gonzalez, Apollonio and Amiral to allow evidence

other than training "indicated by the manufacturer" to establish that the officer using the laser gun was "qualified by training and experience to operate [a] particular laser gun," Assaye, 121 Hawai'i at 215, 216 P.3d at 1238, the record reflects, and the State conceded at oral argument, that no such evidence was presented in this case. Thus, given the record in this case and the applicable case law, the State's dispositive concession is correct that the district court erred in ruling there was proper foundation to establish Officer Maeshiro's qualification to operate the laser gun and thus it was error to admit into evidence the laser speed gun reading of Ramos's vehicle.

In turn, absent Officer Maeshiro's testimony regarding the laser gun reading, there was no evidence to indicate that Ramos's vehicle was traveling at a speed exceeding the speed limit by thirty miles per hour or more, in violation of HRS § 291C-105(a)(1). Thus, Ramos's conviction must be reversed for insufficient evidence to support his conviction. Assaye, 121 Hawai'i at 216, 216 P.3d at 1239.

### III. The State's Motion Requesting Judicial Notice

Although the State has conceded that foundation was lacking to admit the speed gun reading in this case, and that Assaye indicates Ramos's conviction should therefore be reversed, the State nonetheless also sought at oral argument to provide the court with an LTI User's Manual and argued that this court was mandated to take judicial notice of the adjudicative fact that "the User's Manual for the LTI 20/20 laser speed gun that was used in this specific case contains no specific training requirements at all."[4] The court declined to accept the manual

---

[4] The State asserts that its request for judicial notice is related to this court's February 24, 2014 order that the parties be prepared to address "[w]hether the manufacturer of the laser gun used in Ramos's case has set forth specific training requirements for the operation of the laser gun." However, prior to oral argument, the parties were ordered to provide supplemental briefing on the issues identified in the February 24, 2014 order and, with regard to manufacturer training requirements, the State's supplemental brief simply made a passing comment that "Appellee has reason to doubt LTI has promulgated such requirements[.]"

at oral argument or to rule on the State's oral request for judicial notice, advising the State that it could file a motion within three weeks of oral argument, and allowing Ramos an opportunity to respond.

On April 28, 2014, the State filed a Motion Requesting Mandatory Judicial Notice of Adjudicative Fact (Motion).  The State submitted an LTI "UltraLyte User's Manual," Seventh Edition, June 1998 (User's Manual), as an exhibit to its Motion and requests, pursuant to Hawai'i Rules of Evidence (HRE) Rule 201 (1993), that this court take judicial notice of the adjudicative fact that "specific training requirements for the operation of the UltraLyte laser speed gun are not set forth in the UltraLyte User's Manual."  (Emphasis omitted.)  On May 12, 2014, Ramos filed a memorandum in response opposing the State's Motion.

The commentary to HRE Rule 201 provides that "[a]djudicative facts are those relevant to the issues before the court . . . and which serve to 'explain who did what, when, where, how, and with what motive and intent[.]'"  HRE Rule 201 cmt. subsection (a) (citation omitted); see also State v. Edwards, 96 Hawai'i 224, 232 n.8, 30 P.3d 238, 246 n.8 (2001) (denying a request from the prosecution to take judicial notice of an asserted fact because the asserted fact was not relevant to the appeal).

Officer Maeshiro's testimony is less than clear as to the number of manuals he reviewed as part of his training on laser guns and he does not specifically identify the manufacturer's manual he reviewed with regard to the laser gun operated in this case.  Thus, the record does not establish that the User's Manual submitted by the State is the same manual reviewed by Officer Maeshiro.  Moreover, given that the record in

---

We further note that the State's request for judicial notice is inconsistent with the assertion in its Answering Brief that Officer Maeshiro's testimony showed his training met requirements "indicated by the manufacturer."

this case clearly fails to meet the requirements under <u>Gonzalez</u>, <u>Apollonio</u> and <u>Amiral</u>, and the State correctly concedes that it was error to admit the laser gun reading, the purported fact of which the State requests we take judicial notice is not relevant, at least in the context of this case. In short, the asserted fact that the State seeks to establish via judicial notice would have no bearing on the determination of this appeal.

Therefore, the State's Motion is denied.

## IV. **Conclusion**

Based on the foregoing, the Notice of Entry of Judgment and/or Order and Plea/Judgment entered on February 17, 2012, in the District Court of the First Circuit, Honolulu Division, is reversed.

DATED: Honolulu, Hawai'i, June 13, 2014.

On the briefs:

Jon N. Ikenaga
Deputy Public Defender
for Defendant-Appellant

Donn Fudo
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee

Associate Judge

Associate Judge